IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| RAY CHARLES COLLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 14-1324-JDT-egb |
| | ) |
| HAYWOOD COUNTY, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER ADDRESSING PENDING MOTIONS,
DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On December 2, 2014, the Plaintiff, Ray Charles Collier, a pretrial detainee at the Haywood County Jail ("Jail") in Brownsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on December 4, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Haywood County, Tennessee State Trooper Todd Yelverton, and S.A. Jundi, an officer at the West Tennessee Detention Facility in Mason, Tennessee.[1]

---

[1] The Court construes Plaintiff's claims against the Jail as an attempt to assert a claim against Haywood County, which is a named Defendant.

On February 6, 2015, Plaintiff filed a motion seeking the issuance of a writ of habeas corpus ad testificandum to assure his presence at a hearing in this matter. (ECF No. 6.) Because a hearing will not be necessary for the reasons stated below, the motion is DENIED.

On March 9, 2015, Plaintiff filed another § 1983 complaint form addressing the incidents at issue in this case, which was docketed as *Collier v. Gibson,* No. 15-1050-JDT-egb (W.D. Tenn.). In an order issued on March 10, 2015, the Court directed the Clerk to close case number 15-1050 and docket that complaint as an amended complaint in the present case, number 14-1324. (ECF No. 8.)[2] The amended complaint names, as an additional Defendant, Assistant Public Defender Rachele Gibson. (ECF No. 9 at 2.)

The complaint alleges that, on August 24, 2014, Defendant Jundi pulled Plaintiff over as he was driving westbound on Interstate 40. Defendant Yelverton arrived on the scene after the initiation of the traffic stop and issued a ticket to Plaintiff. Because Yelverton never observed Plaintiff driving the vehicle, Plaintiff alleges he was not authorized to write a ticket. The ticket includes a sworn oath by the issuing officer, and Plaintiff contends Yelverton was unable to swear to the truth of the matters contained in the ticket. Plaintiff also complains that his company vehicle containing work and personal belongings was taken from him although he had not been convicted of a crime. He alleges that "[t]his is in violation of

---

[2] The March 10, 2015, order also stated that "[n]o additional filing fee will be necessary." (*Id.*) Therefore, the *in forma pauperis* motion that accompanied the amended complaint (ECF No. 10) is DENIED as moot.

illegal search and seizure laws. I have not been found guilty of any crime." (ECF No. 1-1 at 1.)

The complaint further alleges that

> [t]he judge was in error in setting my bail at $50,000 and that was excessive for a 3rd or 4th offense D.U.I. In order for the State to enhance my D.U.I. to a fourth offense they must have a certified copy of my driving record from the state that they intend to use the D.U.I. from. The state must also have the advisement in writing of the penalty for another conviction for D.U.I. from the Judge who sentenced me. They didn't present any of this at my preliminary hearing. A bond of $50,000 dollars is excessive and it was intended to keep me in jail in hopes of me plea bargaining my case.

(*Id.*)

No preliminary hearing was held until 87 days after Plaintiff's arrest, allegedly in violation of his right to due process. When 64 days had passed since his arrest, Plaintiff filed a motion to dismiss, which was denied. The complaint alleges that the denial of Plaintiff's motion violated his right to due process. In addition, at the preliminary hearing, Plaintiff was not allowed to cross-examine Defendant Jundi. Instead, the State presented only the testimony of Defendant Yelverton. Plaintiff contends that the judge should have dismissed the charge rather than binding the matter over to the grand jury. Plaintiff raised an objection with the judge, who threatened not to have the preliminary hearing for another two months. Plaintiff stated on the record that he was proceeding with his preliminary hearing under duress. (*Id.* at 1-2.)

Plaintiff complains that he was sent to prison without have been found guilty of a crime and that he is housed with convicted inmates. He allegedly has been attacked by

convicted inmates on two occasions. On one such occasion, one of Plaintiff's teeth was knocked loose, and he had to go to the dentist to get it pulled. He was not given any pain medication other than an over-the-counter product. The inmate who attacked Plaintiff was taken to solitary confinement. Plaintiff was removed from the pod but he was returned an hour later. Subsequently, a state prisoner hit Plaintiff in the eye, causing it to swell shut. According to Plaintiff, "[t]here was nothing done about it." (*Id.* at 2.) Plaintiff alleges he is in constant fear for his life, in violation of his Eighth Amendment rights. He has written grievances asking to be moved to a pod that does not house convicted inmates. Captain Fisher, who is not a party to this action, responded that Plaintiff would not be moved and that he should consult his lawyer. (*Id.*)

Plaintiff seeks an order dismissing his pending charges of driving on a revoked license and driving under the influence and directing that he be immediately released. Plaintiff also seeks money damages and the return of his vehicle and belongings. (ECF No. 1 at 3.)

In his amended complaint, Plaintiff contends that his defense attorney, Defendant Gibson,

> is conspiring under the color of law, to help the District Attorney to convict me. She did not file any of the motions that I asked her to file. She asked the Judge to give me a mental evaluation seven days before my trial in order to delay my trial. She has given the District Attorney information that I told her. My speedy trial has not been honored because she is working with the District Attorney. I been in Jail over (180) days trying to go to trial.

(ECF No. 9 at 2.) The prayer for relief asks that Defendant Gibson be removed from Plaintiff's case immediately. He also seeks money damages. (*Id.* at 3.)

4

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>    (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>    (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P.

8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint does not state a valid claim for false arrest against Defendants Yelverton and Jundi. A Fourth Amendment claim for false arrest requires an arrest without

---

[3] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

probable cause. *See, e.g., Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) ("Today it is well established that an arrest without probable cause violates the Fourth Amendment."). Probable cause exists where "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett*, 316 F.3d at 580 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Wolfe v. Perry*, 412 F.3d 707, 717 (6th Cir. 2005) ("probable cause necessary to justify an arrest is defined as 'whether at that moment [of the arrest] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense'" (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations in original)); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

The complaint sets forth no facts suggesting that Defendant Jundi lacked probable cause to stop Plaintiff for driving under the influence. That Defendant Wolverton issued Plaintiff a ticket without observing him operating a vehicle does not state a claim for false arrest. The Tennessee DUI statute prohibits a person who is under the influence from "driv[ing] or [being] in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, any shopping center, trailer park, apartment house complex or any other location which is generally frequented by the public

8

at large . . . ." Tenn. Code Ann. § 55-10-401 (2013). Even if Defendant Wolverton did not see Plaintiff operate the vehicle, he was in physical control if he was alone in the vehicle with possession of the keys. *State v. Lawrence,* 849 S.W.2d 761, 765 (Tenn. 1993); *State v. Turner,* 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996).[4]

The complaint also sets forth no facts indicating that the seizure of Plaintiff's vehicle and its contents violated his rights. It is unclear whether Plaintiff is complaining that his vehicle was seized when he was arrested or whether state agents would not release his vehicle to a licensed driver after his arrest. If Plaintiff was, in fact, impaired and did not have a valid driver's license, he was not entitled to operate the vehicle after issuance of the ticket. Tennessee law allows the seizure and forfeiture of vehicles used in the commission of a person's second or subsequent DUI offense. Tenn. Code Ann. § 55-10-414. The Tennessee Attorney General has opined that the vehicle may be seized at the time of arrest. Tenn. Op. Atty. Gen. No. 98-224, 1998 WL 851369 (Tenn. Att'y Gen. Dec. 1, 1998). If the State is seeking the forfeiture of Plaintiff's vehicle, the complaint does not allege that the statutory procedure has not been followed.

---

[4] Although he does not cite any authority, Plaintiff appears to rely on Tennessee Code Annotated § 6-21-504(b), which provides that "[n]o arrest shall be made, except upon a warrant duly issued, unless the offense is committed in the presence of the officer making the arrest, or unless in the case of felony." A fourth or subsequent DUI conviction is a felony in Tennessee. *See* Tenn. Code Ann. § 55-10-502(a)(4). Even if Plaintiff were taken into custody in violation of state law, the Fourth Amendment does not prohibit a custodial arrest for a misdemeanor. In *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), which considered a custodial arrest for minor traffic violations punishable only by a fine, the Supreme Court held that, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."

Claims for deprivation of property without due process are not actionable under § 1983 if adequate state remedies are available to redress the deprivation. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). The Sixth Circuit Court of Appeals has rejected § 1983 claims presenting due process challenges to civil forfeiture laws. *See Ross v. Duggan,* 402 F.3d 575, 584 (6th Cir. 2004) ("At bottom, *pre-seizure* hearings are not constitutionally mandated, as long as interested persons receive notice and a timely post-seizure opportunity to be heard prior to forfeiture."); *see also id.* at 586 ("[T]he initial seizures were constitutionally justified upon 'probable cause,' as long as the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity to contest ultimate forfeiture.").

Plaintiff's claims arising from the amount of bail and the timing and conduct of his preliminary hearing are not asserted against any named Defendant. An amendment to cure this deficiency would be futile because a suit against the State of Tennessee would be barred by the Eleventh Amendment, and the trial judge and prosecutor are protected by absolute immunity.

The Court cannot order that Plaintiff's state criminal charges be dismissed. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute

prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks and citation omitted). The Supreme Court has emphasized that

> [c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id.* at 46. Irreparable injury may be found only where the statute under which the Plaintiff is charged is "flagrantly and patently violative of express constitutional prohibitions, or where there is a showing of bad faith, harassment, or other unusual circumstances that would call for equitable relief." *Mitchum v. Foster,* 407 U.S. 225, 231 (1972) (internal quotation marks, ellipses and citations omitted). No extraordinary circumstances are alleged in this case.

Plaintiff's claims arising from his treatment at the Jail are asserted only against Haywood County. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a

11

constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A local government "cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which

the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)). Plaintiff's complaint does not allege that he was injured by an unconstitutional policy or custom of Haywood County, as opposed to the malfeasance or nonfeasance of individual employees.

Plaintiff's rights were not violated by being housed with convicted inmates. In general, an inmate does not have a liberty interest in a particular security classification or in freedom from administrative segregation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). The United States Constitution does not require that pretrial detainees be housed apart from convicted inmates.

This analysis is not altered by the fact that Plaintiff was assaulted on two occasions by convicted inmates. This claim arises under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).[5] An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th

---

[5] Convicted inmates' rights stem from the Eighth Amendment, while pretrial detainees' rights stem from the Fourteenth Amendment. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Although Plaintiff is a pretrial detainee, the Court will analyze his claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners.

Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. "'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 833); *see also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (same). Therefore, the Court will assume that the objective component of an Eighth Amendment claim has been satisfied.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, the plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25,

14

32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The complaint does not allege that any Jail employee was aware that any convicted inmate presented a risk to Plaintiff and consciously disregarded that risk. That Plaintiff's

15

assailants have been convicted of unspecified offenses does not establish that they presented an unacceptable risk to Plaintiff's safety. Because the subjective component of an Eighth Amendment claim has not been established, Plaintiff has no constitutional claim for which Haywood County can be liable. *S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trs.,* 771 F.3d 956, 963 (6th Cir. 2014).

Plaintiff also has no claim arising from his fear that he might be assaulted because a fear of future assault does not satisfy the objective component of an Eighth Amendment violation. As the Sixth Circuit has explained, in a decision affirming the *sua sponte* dismissal of a case in which a prisoner claimed that prison guards failed to protect him from threatening gang members:

> The plaintiff primarily requests monetary relief from the defendants in the form of compensatory and punitive damages. Requests for damages, however, seek to compensate plaintiffs for past injuries. *See Carey v. Piphus*, 435 U.S. 247, 254-57, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). In this case, Wilson advances no allegation that the Aryan Brotherhood actually injured him physically. Nor does he even hint that he has suffered any emotional or psychological injury from the alleged threats. Even if he had claimed a non-physical injury such as fear of assault at the hands of the prison gang, however, monetary damages for such alleged harm would not have been appropriate in *this* Eighth Amendment context. The Supreme Court itself has noted that "*extreme* deprivations are required to make out a conditions-of-confinement claim," *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (emphasis added), as opposed to an excessive force claim. No such egregious failures on the part of prison officials have been established here. Also, as the Seventh Circuit recently concluded in *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996):
>
>> However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does

> not reflect the deprivation of "the minimal civilized measures of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 . . . (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 . . . (1981), that is the touchstone of a conditions-of-confinement case. Simply put, [the plaintiff] alleges, not a "failure to prevent harm," *Farmer*, 511 U.S. [at 834], 114 S. Ct. 1970 . . ., but a failure to prevent exposure to risk of harm. This does not entitle [the plaintiff] to monetary compensation. *See Carey*, 435 U.S. 247, 258-59, 98 S. Ct. 1042, 55 L. Ed. 2d 252 ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.").

*Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (alterations and ellipses in original); *see also Osborne v. Little*, No. 3:07-1290, 2008 WL 4057093, at *2-3 (M.D. Tenn. Aug. 29, 2008) (same).

Plaintiff cannot sue his attorney, Defendant Gibson, under § 1983. Attorneys, whether court appointed or privately retained, do not act under color of state law for purposes of § 1983. *Smith v. Hilltop Basic Res., Inc.*, 99 F. App'x 644, 646 (6th Cir. 2004); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003) ("Here, the defendant attorneys did not act under color of state law as privately retained attorneys, although the acts alleged related to state court litigation."); *Otworth v. Vaderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); *Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998); *see Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (holding that public defender does not act under color of state law for purposes of

§ 1983); *McCord v. Bailey*, 636 F.2d 606, 613 (D.C. Cir. 1979) (applying *Polk County* to retained criminal lawyers).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 511 F. App'x at 5; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). Because the deficiencies in Plaintiff's complaint cannot be cured, the Court declines to grant leave to amend.

Therefore, the Court DISMISSES Plaintiff's complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma*

*pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 733 F.3d 175, 177-78 (6th Cir. 2013), *cert. granted,* 82 U.S.L.W. 3675 (U.S. Oct. 2, 2014) (Nos. 13-1333, 13A985).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE